UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CYNTHIA MARIE PRISE,<br>    Plaintiff, | §<br>§<br>§ |
| v. | § Case # 1:18-CV-220-DB |
| COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | §<br>§ MEMORANDUM DECISION<br>§ AND ORDER<br>§ |

## INTRODUCTION

Plaintiff Cynthia Marie Prise ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act") seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned, in accordance with a standing order (*see* ECF. No. 16).

Plaintiff moved for judgment on the pleadings (ECF No. 12) pursuant to Federal Rule of Civil Procedure 12(c). The Commissioner filed a response in opposition (ECF No. 13), to which Plaintiff filed a reply (ECF No. 15). For the reasons set forth below, Plaintiff's motion (ECF No.12) is **DENIED**, and the final decision of the Commissioner is **AFFIRMED**

## BACKGROUND

On November 13, 2014, Plaintiff filed an application for disability benefits under Title II, alleging disability beginning January 15, 2007(the disability onset date). *See* ECF No. 5, Transcript (Tr.) at 85, 207. Plaintiff alleged disability based on rods/screws in neck, degenerating discs, nerve compression, concussion and broken neck in 2007, left arm and shoulder blade pain, memory issues, fatigue, numbness/tingling, migraines, inability to sit/stand/walk for long periods, high

blood pressure, allergies, frequent urination and urinary tract infections, and kidney stones. Tr. 85, 207. Plaintiff's claim was denied initially on June 8, 2015, after which she requested a hearing. Tr. 21. Plaintiff's hearing was held before Administrative Law Judge Michael Carr (the "ALJ") on June 20, 2016. The ALJ presided over the hearing via video from Falls Church, Virginia. Tr. 35-72. Plaintiff appeared and testified from Buffalo, New York, and was represented by counsel. Tr. 35-72. Timothy Shaner, a vocational expert ("VE"), also appeared and testified at the hearing. *Id*. The ALJ issued an unfavorable decision on August 15, 2017 (Tr. 21-30), finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. On December 14, 2017, the Appeals Council denied Plaintiff's request for further review. Tr. 1-7. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

Plaintiff was born on April 21, 1964, and she was 42 years old on her alleged disability onset date. Tr. 29. She reported having two years of college education. Plaintiff worked as a receptionist since 1999 at Buffalo Basic Ingredients, Inc., a family-owned business. Tr. 208.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. Id. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the

Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At the first step of the sequential evaluation, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2019, and she had not engaged in substantial gainful activity since the alleged onset date. Tr. 23. At step 2, the ALJ found that Plaintiff had the following severe impairments: degenerative changes cervical spine; migraines headaches; status post SI joint fusion lumbar spine; overactive bladder. Tr. 23. However, the ALJ found Plaintiff's adjustment disorder was a non-severe impairment. Tr. 24. At step 3, the ALJ found that none of Plaintiff's severe impairments met or medically equaled the severity of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 25.

Prior to proceeding to step four, the ALJ formulated Plaintiff's residual functional capacity ("RFC"), or the most she could still do despite her impairments, 20 C.F.R. § 404.1545. The ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b),[1] with additional limitations. Tr. 25. Specifically, Plaintiff could lift and/or carry

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

10 pounds occasionally and lesser weights frequently; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could not climb ladders, ropes, or scaffolds; could not perform any overhead reaching; could not operate a motor vehicle or heavy machinery; must avoid bright, flashing lights; and required a work environment with no greater than a moderate noise level. Tr. 25.

At step four of the sequential evaluation, the ALJ concluded that Plaintiff had no past relevant work. Tr. 29. At step five, the ALJ found that based on the VE's assessment and Plaintiff's testimony at the hearing and considering her RFC, age, education, and work experience, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as cashier, counter clerk, and cashier. Tr. 29. Accordingly, the ALJ determined that Plaintiff was not under a disability within the meaning of the Act from January 15, 2007, the alleged onset date, through August 18, 2017, the date of the decision. Tr. 30.

**II.    Analysis**

Plaintiff argues the ALJ's RFC finding was not supported by substantial evidence. *See* ECF No. 12-1 at 21-26. According to Plaintiff, the ALJ improperly relied on a medical opinion that predated Plaintiff's neck surgery, used his own lay interpretation of the bare medical findings, and failed to conduct a function-by-function assessment or to cite to a medical evidence assessment of Plaintiff's functioning. *Id*. Plaintiff also argues the ALJ failed to properly evaluate her migraines by disregarding evidence that directly undermined his conclusions and adopted his own migraine limitation.

On July 15, 2008, Plaintiff underwent: complete anterior diskectomies at C4-5, C5-6, and C6-7 with decompression of spinal canal and neural foramina; anterior partial vertebrectomy of C5 to C6; anterior fusion from C4 to C7 with Graftech-machined fibular allograft spacer; and

anterior Spinal Concepts plate fixation from C4 to C7. Tr. 286. Dr. Edward D. Simmons ("Dr. Simmons") performed the procedures. Tr. 286. Plaintiff's preoperative and postoperative diagnosis was disc herniations with ongoing radiculopathy at C4-5, C5-6, and C6-7. Tr. 286. On February 15, 2011, Plaintiff underwent a left sacroiliac joint fusion, also performed by Dr. Simmons. Tr. 283-284. Her preoperative and postoperative diagnosis was left sacroiliac joint arthrosis. Tr. 283. The record also reflects that Plaintiff previously had the following lumbar procedures: "cervical fusion in 2008," "lumbar disk in 1970," "lumbar disk in 1997," and "lumbar disk fusion in 2004." Tr. 658.

On February 10, 2012, Plaintiff had a neurologic consultation with Marc Frost, M.D. ("Dr. Frost"), at DENT Neurologic Institute ("DENT"). Tr. 465. She saw Dr. Frost and other providers at DENT primarily for her headaches. Her records at DENT cover several years. Tr. 398-468. Shawn Cotton, M.D. ("Dr. Cotton"), at East Aurora Family Practice, was Plaintiff's primary care physician. Tr. 381-97, 621-45. On January 9, 2013, Plaintiff saw Dr. Cotton for a follow up. Tr. 393. She reported her migraines were much better with Topamax, but she still had left flank/suprapubic pressure with bending. Tr. 393. A PHQ-9 depression screen revealed moderate depression. Tr. 393. At the time of the visit, Plaintiff's reported medications were Premarin, Flonase, Topamax, Cymbalta, Amitriptyline, and Lisinopril. Tr. 393. Dr. Cotton assessed her with depression, back pain, abdominal pain left lower quadrant, and upper respiratory infection ("URI"), and prescribed Acetaminophen-Hydrocodone for Plaintiff's back pain. Tr. 394.

Plaintiff returned to Dr. Cotton on July 15, 2013, reporting increased neck pain. Tr. 389. The visit note indicates that Plaintiff "was started by Dr. Simons [sic] on gabapentin 300mg BID." Tr. 389. Dr. Cotton noted that Plaintiff had diminished neck range of motion, cervical and lumbosacral tenderness, and tight paraspinal muscles bilaterally. Tr. 389. He assessed Plaintiff

6

with headache, hyperlipidemia, hypertension, anxiety disorder, and chronic pain syndrome, and continued Plaintiff on Topamax, Elavil, Lisinopril, and Cymbalta. Tr. 391.

Upon referral from Dr. Simmons, Plaintiff began physical therapy for her neck pain on July 23, 2013, at East Aurora Family Physical Therapy. Tr. 290. She complained of constant pain from the right more than left scapula and upper trapezius muscles. Tr. 290. She also reported experiencing radiculopathy to the brachium and paresthesia in the fourth and fifth digits and thumb. Tr. 290. She had restricted range of motion, pain with resisted motions of cervical flexion, reduced strength of bilateral shoulder abduction, flexion, external rotation, elbow extension, and flexion, and tenderness on palpation. Tr. 290-91. Flexion of the neck was painless and limited to 15 degrees. Right and left lateral flexion of neck was painless and limited to 15 degrees. Right rotation of the neck was painless to 60 degrees, and left rotation was painless to 45 degrees. Tr. 290-91

When Plaintiff filed her application for disability, she indicated she was currently working. Tr. 207. She also reported that her condition caused her to make changes in her work beginning January 15, 2007. Tr. 207. At the hearing, the ALJ asked Plaintiff what caused her to stop working, to which Plaintiff replied: "I was just not able to work because of my neck and I just had to go to the bathroom too much and it got to be too busy." Tr. 40. Plaintiff did not initially mention migraine headaches s as a reason she was unable to work. Tr. 40. When prompted by the ALJ, however, Plaintiff stated she stopped working because she could not get any relief for her migraines. Tr. 43. She also stated that she was getting "some relief" from Botox injections although not as well as she "wish[ed] it would. *Id*. Also, even though Plaintiff was no longer working she continued to receive a paycheck of $90 a week because she is the wife of the company president. *Id*.

7

In early May 2015, Plaintiff had an anterior cervical discectomy and fusion at C7-T1. Tr. 836. Her discharge instructions state: "She should wear cervical collar at all times." She is advised against any lifting." Tr. 800. Plaintiff's post-operative diagnosis was reported as disk herniation with advance spondylosis at C7-T1. Tr. 814. Two weeks after surgery, Plaintiff reported her pain had significantly improved, and she was determined to be doing well. Tr. 836-37. The treatment plan stated Plaintiff could begin to increase her activities and wean from the cervical collar. Tr. 837. On June 18, 2015, approximately one month after surgery, Plaintiff stated that her arm symptoms had resolved, and the neck pain that gave her headaches had improved. Tr. 834. However, she "continues with chronic neck pain [and] also gets her typical migraines." Tr. 834. The note also reflects that Plaintiff was employed outside the home but was not working since the date of her surgery. Tr. 834. She also stated she was walking up to 40 minutes a day. Tr. 835. On July 20, 2015 (two months post-operatively), Plaintiff was noted to have some residual back pain, but as for her upper extremities, neurological examination revealed full power in all muscle groups and normal sensory findings to light touch bilaterally. Tr. 832-33. She reported she was still walking 40 minutes a day for exercise. Tr. 832-33. On August 6, 2015, Plaintiff told Dr. Cotton that she is wearing a cervical brace "24/7." Tr. 639. In December 2015, approximately seven months after surgery, Plaintiff reported interval improvement of neck pain and headaches. Tr. 774-76. Her range of motion in the cervical spine in flexion is 40%, extension 30%, and rotation is 50% to left and right. Tr. 775.

On June 6, 2016, Plaintiff reported to Dr. Simmons that she was having some continued problems with pain in her posterior neck as well as her left shoulder with limited range of motion of the left shoulder. Tr. 748. Her CT scan showed a solid fusion from C4-7, and the C7-T1 interbody space in good position. Tr. 748. On June 17, 2016, Plaintiff reported to Dr. Frost that

8

she had been doing well until she hit her head on a cabinet and suffered a concussion. Tr. 690-92. Because of her continued discomfort, Plaintiff also had a right sacroiliac joint injection and left shoulder injection in August 2016, and she reported complete resolution of the symptoms one month later. She was also still walking for exercise. Tr. 734. The note goes on to state that Plaintiff sits and stands with normal posture and angulated a stable gait pattern. Tr. 736. There is full pain-free range of motion of the shoulders. Tr. 736. Lumbar range of motion is graded as flexion 50%, extension 30%, and lateral bending 30% bilaterally. Tr. 736. The note does not indicate that any restrictions were imposed upon Plaintiff. *Id*. In October 2016, Dr. Cotton reported that Plaintiff was only taking pain medication "on average 2 weeks out of a month." Tr 634. Plaintiff also saw K. Kent Cheval, M.D. ("Dr. Cheval") in October 2016 for her overactive bladder. Tr. 716-19. On her initial visit to Dr. Cheval, Plaintiff completed a health questionnaire on which she reported no joint pain or back pain but reports only neck pain. Tr. 719.

The last date of service from Dr. Simmons is after her denial of disability by the ALJ but before the Appeals Council denial of her petition for review. Tr. 14-15. The note states she has no new concerns or complaints regarding her postoperative neck, back or SI joints. The note reflects that her greatest complaint is migraines. Her cervical spine flexion is to about 35-40% of normal, extension 20%, rotation to the left about 30% of normal, and rotation to the right about 40% of normal. Notes indicate that her lumbar spine range of motion was also restricted. SLR bilaterally was negative. Hoffman sign was negative. Tr. 14-15. Dr. Simmons reports that due to significant loss of active range of motion in her lumbar and cervical spine, as well as the potential for further surgery, it is not likely that she will perform any degree of" substantial" work long term. *Id*. Interestingly, however, Dr. Simmons does not limit Plaintiff in any way.

9

Plaintiff argues that the ALJ improperly relied on a stale opinion from internal medicine examiner Hongbiao Liu ("Dr. Liu") in assessing her RFC. *See* ECF No. 12-1 at 22. However, the ALJ gave only some weight to Dr. Liu's opinion, remarking that the opinion was "short and vague." Tr. 29. The Court finds that the opinion, though short, was not stale. Even though the opinion pre-dated Plaintiff's last cervical surgery, there was no indication that Plaintiff's condition had significantly deteriorated after the consultative exam. *See Dronckowski v. Comm'r of Soc. Sec.*, No. 1:18-CV-0027 (WBC), 2019 WL 1428038, at *5 (W.D.N.Y. Mar. 29, 2019) (finding that Plaintiff failed to show that her impairment deteriorated after the purportedly stale opinion was provided (citing *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018) ( "[A] medical opinion is not necessarily stale simply based on its age."); s*ee also Andrews v. Berryhill*, No. 17-CV-6368, 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (ALJ did not err in relying on dated opinions where there was no indication the plaintiff's "condition had significantly deteriorated after the issuance of . . . [the] opinions such that they were rendered stale or incomplete"). Further, the ALJ considered the entire record, including the later evidence. Tr. 25-29. Therefore, the Court finds no error in the ALJ's assessment of Dr. Liu's opinion.

Plaintiff's argument that the RFC finding is inadequate because it was based on the ALJ's "lay interpretation of the bare medical findings to determine Plaintiff's residual functional capacity" (ECF. No. 12-1 at 23) also fails. The ALJ's responsibility to weigh and synthesize the evidence does not equate with the ALJ relying on a "lay interpretation" as Plaintiff argues. *See Johnson v. Colvin*, 669 F. App'x 44, 46-47 (2d Cir. 2016) (citing 20 C.F.R. § 404.1545(a)(3) (explaining that an ALJ looks to "all of the relevant medical and other evidence," including relevant medical reports, medical history, and statements from the claimant when assessing an applicant's residual functional capacity). The ALJ, who alone is responsible for assessing RFC, is

qualified to evaluate the medical evidence and reach a conclusion and need not rely on a medical source statement to decide a claimant's claim properly. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 404.1546(c); Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *2 (S.S.A. 1996). The Court finds that the RFC is supported by the record in its entirety, and the ALJ explained in detail the medical records and opinions forming the assessed RFC. *See Wynn v. Comm'r of Soc. Sec.*, 342 F. Supp. 3d 340, 349 (W.D.N.Y. 2018). This is particularly true given the paucity of medical evidence imposing restrictions upon Plaintiff, as well as her continued work activity. In this case, other than post-surgical restrictions, the Court can glean no restrictions imposed upon Plaintiff. Until her last surgery, she continued to work, and as the ALJ noted, she continued to be extremely active. Tr. 26.

Dr. Liu noted that Plaintiff complained of daily migraines since 2007. Tr. 617. However, the record before the Court does not support this assertion. In September 2015, the notes from DENT reflect that Plaintiff's headaches occur approximately once per week. Tr. 702. At that visit, Plaintiff also stated "her headaches are stable." Tr. 703. The exam findings at DENT uniformly reflect that her motor strength is 5/5 in both upper and lower extremities. Tr. 702-03. At various times she denied migraines or headaches. Tr. 386, 390, 658. Furthermore, as explained above, Plaintiff mentioned her headaches as a reason she stopped working only upon prodding by the ALJ. Tr. 43.

The Court notes that although headaches were a frequent complaint, the objective records do not support a constant pattern of headaches since 2007. As noted in Dr. Liu's examination, cervical spine flexion and extension was 35 degrees rotation, rotation 70 degrees bilaterally and lateral flexion 35 degrees bilaterally. Tr. 619. Lower lumbar spine flexion and extension 70 degrees, lateral flexion 20 degrees bilaterally, and rotation 20 degrees bilaterally. *Id*. In reviewing

her August 2016 report from Dr. Simmons, Plaintiff had full pain-free range of motion of the shoulders. Tr. 734. Her lumbar range of motion is similar or improved in certain aspects from that of the report of Dr. Liu prior to the surgery. Tr. 736. While treating at DENT in December 2016, the notes indicate that Plaintiff's range of motion in her neck is slightly limited in all directions, but she is in no acute distress. Tr. 668. Even though Dr. Simmons notes more restriction in her lumbar spine a year later (and after her disability claim has been denied), he noted that she had no new concerns or complaints regarding her postoperative neck, low back, or SI joints. Tr. 14. X-rays demonstrate that there is a low index of suspicion for stenosis to explain her complaints with continued headaches. Tr. 16. Dr. Simmons opined that given Plaintiff's medical condition, "it is not likely she will ever be able to perform any degree of 'substantial' work long-term" and she "should apply for an[d] receive Social Security Disability benefits." Tr. 16. To the extent Dr. Simmons opines that Plaintiff is disabled, it is well settled that this is a matter reserved for the Commissioner. *Snell v. Apfel*, 177 F.3d 128,133 (2d Cir. 1999) ("[S]ome kinds of findings— including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner. . . . [T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability."); 20 C.F.R. § 404.1527(d) (opinions that a claimant is disabled or unable to work are opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case).

The notes from DENT also indicate that Plaintiff received a number of trigger point injections (Tr., 669, 672, 680, 688, 696), which Plaintiff acknowledged her headaches decreased by 50% (Tr.. 66). Plaintiff was also treated with Botox injections for her headaches. Tr. 664-666. The records reflect that Plaintiff was doing well until she struck her head on a cabinet and suffered a concussion. Tr. 690-92. However, shortly thereafter, Plaintiff reported her concussion symptoms

had significantly improved. Tr. 685-86. She was also counseled regarding the importance of moderate physical activity daily. Tr. 679. The ALJ discussed her headaches at length in forming his opinion explaining that such alone, or in combination with other impairments, did not prevent her from performing work. Tr. 27-28. Thus, Plaintiff's argument that the ALJ did not properly consider her migraines is unavailing.

The Court finds that the ALJ's decision was thorough, and the evidence of record supports the RFC finding—Plaintiff's lengthy surgical history notwithstanding. This was particularly apparent in light of Plaintiff's continued work activity until shortly before her administrative hearing, as noted by the ALJ. Tr. 23. Other than one post-surgical note, there is nothing in the record from Plaintiff's physicians imposing any limitations in lifting, bending, twisting, flexing, extending, rotating, stooping, sitting, standing, walking, crawling, reaching, pulling, pushing, manipulating, climbing, interactions with the public, supervisors, employees, or driving.

Based on his thorough review of the medical evidence, including Dr. Liu's restrictions, the Court finds the ALJ properly determined Plaintiff's RFC. Notably, the ALJ limited Plaintiff to sedentary level lifting/carrying, extremely limited postural activities, and no overhead reaching to accommodate her allegations of pain and other symptoms resulting from her multiple neck and back surgeries. Tr. 25, 29. The ALJ also accommodated Plaintiff's headaches by ensuring she avoids bright flashing lights and more than moderate noise. Tr. 29.

The record shows that while Plaintiff experienced neck and low back pain and decreased neck range of motion, she also routinely exhibited full strength in all extremities, intact reflexes and coordination, and normal gait. Tr. 402, 405, 408, 412, 415, 424-25, 427, 430, 453, 459, 467, 618-19, 676, 686, 692, 700, 703, 706, 708. She exhibited intact sensation, and straight leg raise testing was negative. Tr. 309. Thus, contrary to Plaintiff's argument, substantial evidence supports

the ALJ's finding that Plaintiff retained the RFC to perform light work with postural and environmental limitations. Tr. 25. Accordingly, the Court finds no error in the ALJ's decision.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is **DENIED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE